MAY TERM, 1881, No. 125.                    MAY 9TH, 1881.

## Appeal of John Wilson *et al.*

1. Where an auditor, appointed to distribute the assigned estate of a husband, allowed the claim of the wife upon a note executed two days before the assignment, and found the facts to be that in 1843, thirty-four years earlier, the money of the wife, for which with its interest the note had been given, was paid to the husband in her presence upon their joint receipt, and he had invested it for her, and in 1848 had verbally agreed to be responsible for its payment, and that it was subsequently lost, the Court refused to reverse the decree of the court below confirming the report of the auditor.

2. The joint receipt originally given, rebutted any presumption that the money was received by the husband in virtue of his marital rights.

APPEAL of John Wilson & Son, Russell & Longenecker, the First National Bank of Freeport, and James Harbison, from the decree of the Court of Common Pleas of *Bedford County*, confirming the report of the auditor appointed to make distribution of the assigned estate of Nathan H. Wright.

Nathan H. Wright made an assignment for the benefit of his creditors of all his estate, real and personal, August 27th, 1877. His assets were sufficient to pay about thirty per cent. of his debts. On the 25th of August, two days before the assignment, he executed a judgment note payable one day after date to his wife, Sarah Ann Wright, for $1230.15.

The auditor appointed to distribute the fund in the hands of the assignee found the facts concerning this note to be as follows: Nathan H. Wright and Sarah A. Donelly were married in June, 1843, and at this time she was a minor aged eighteen years. David Tussey, her guardian, had a small separate estate belonging to her. In the fall of 1843 Tussey paid the money of his ward, amounting to $335, to Wright in the presence of his wife, and they both signed a receipt for it. Wright loaned the money to his employer, Henry S. Spang, who died in 1845, having devised his property to his son, with a direction to pay his debts. In consequence of the failure of the son in 1850 the money was lost. Wright received the money in 1843 in trust for his wife and invested it for her, and in 1848 agreed in consideration that she would leave it invested with Spang, he would be responsible for its payment to her. He gave no written obligation for it until that of August 25th, 1877, but always considered it her money and that he held it for her. In 1868 or 1869 he also received $137, the proceeds of some real estate which belonged to her. These two items with the interest on them constituted the note in question.

Wright testified: " After the guardian went away, I told

my wife that I would lend the money on interest, and it would bring her some interest. . . . I never received this money as my own, never counted it mine. I received it for her. . . . I loaned it for her. . . . I always told my wife I would be responsible to her for this money; she should never lose a dollar . . . would pay it myself; I would pay it with interest. . . . Before there had been any investment of this money to Spang or any appropriation of it, I had agreed to put it out for her."

Sarah A. Wright testified: "My husband received this money for me. He told me he had this money. He would put it on interest for me. He did it of his own free will. . . . He had no right to use it as his own. I objected to leaving the money in the shape it was when we left that country. My husband said he would be responsible for it. He said I should have it with interest. He said it all the time after this."

Four other witnesses testified as to conversations with Wright between 1866 and 1874, in which he acknowledged having received the money as that of his wife, and promised to pay it to her.

The auditor allowed the claim and directed its payment *pro rata* with the other debts of Wright. To this finding exceptions were taken by creditors which the court below, HALL, P. J., overruled.

The decree of the Court was assigned as error.

*John Cessna* and *Russell & Longenecker* for appellants.

The payment to Wright by the guardian in 1843 was for his own use. If paid to him for his wife and loaned to Spang for her benefit and lost, his promise to be responsible was void for want of consideration and because not reduced to writing. The receipt by him of the securities is presumed to be a reduction to his possession: Moyer's Appeal, 27 P. F. Smith, 482; Gray's Estate, 1 Barr, 329; Johnston *v.* Johnston, 7 Casey, 450; Wesco's Appeal, 2 P. F. Smith, 195; Gicker's Admr. *v.* Martin, 14 Wr., 138; Gross *v.* Reddig, 9 Wr., 406.

His promise in 1848 and afterwards, was simply the promise of one person to pay the debt of another, and not having been reduced to writing, was void. Prior to 1848 husband and wife were but one person in law, and could make no contract with each other: Lehr *v.* Beaver, 8 W. & S., 102; Baer *v.* Baer, 9 Casey, 525; Stuckey *v.* Keefe, 2 Casey, 397.

The wife was not entitled to interest during the life of her husband: Gochenaur's Estate, 11 Harris, 460; Mann's Appeal, 14 Wr., 375; Middleton *v.* Middleton, 1 Phila., 209.

*J. M. Reynolds* for the appellee.

The first position of appellants is not sustained by the evidence nor the finding of the auditor. The promise is in writing. The note given in 1877 is the promise evidenced in writing, and as to this no one but the husband could take advantage of it. He was a trustee: Moyer's Appeal, 27 P. F. Smith, 485 ; Ziegler's Appeal, 4 W. N. C., 454. There was a positive agreement to pay interest : Mellinger *v.* Bausman, 9 Wr., 529 ; Graybill *v.* Moyer, 9 Wr., 530.

PER CURIAM : We entirely concur in the opinion of the learned auditor and the court below upon the facts reported by him. The joint receipt given by husband and wife for the money originally, rebutted any presumption that it was received by the husband in virtue of his marital rights, and this was confirmed by all the other testimony in the case.

Decree affirmed and appeal dismissed at the costs of the appellant.